[S. F. No. 9114. In Bank.—January 5, 1922.]

## J. MOREY, Respondent, v. A. PALADINI, Appellant.

[1] APPEAL—REQUEST FOR PREPARATION OF TRANSCRIPT—RELIEF FROM DEFAULT.—Where on the hearing of a motion to dismiss an appeal from a judgment upon the ground that no written request for a transcript of the record, as required by section 953a of the Code of Civil Procedure, had been filed, it appeared that a transcript had been prepared without such request and certified to by the trial judge subject to the qualification that no request for its preparation had been made, the appellate court, having acquired jurisdiction of the appeal by the notice of appeal and undertaking, properly continued the motion to permit the appellant to apply to the trial court for relief under section 473 of such code, and where such relief was granted, the motion to dismiss the appeal was properly denied.

[2] CONTRACT—VOID CONTRACT.—A void contract, a contract against public policy or against the mandate of a statute may not be made the foundation of any action, either in law or in equity.

[3] ID.—ILLEGALITY—INQUIRY BY COURT.—When the court discovers a fact which indicates that a contract is illegal and ought

not to be enforced, it will, of its own motion, instigate an inquiry in relation thereto.

[4] MONOPOLY—DELIVERY OF LOBSTERS FROM MEXICAN WATERS—EXCLUSIVE RIGHT OF SALE.—A contract to deliver lobsters in this state from Mexican waters during the season when under the fish and game laws of this state no lobsters may be taken in California waters, and giving the purchaser the exclusive right of sale of such lobsters in this state north of parallel 36 degrees north latitude, is illegal as being in violation of the Sherman anti-trust law and section 1673 of the Civil Code.

[5] ID.—INVALIDITY OF AGREEMENT—DEPRIVATION OF ADVANTAGES OF FREE COMPETITION.—An agreement which has some direct and immediate effect upon interstate commerce is within the inhibition of the Sherman Anti-Trust Act, and it is not essential that the result of the contract should be a complete monopoly in order to vitiate the agreement, but it is sufficient if it really tends to that end and deprives the public of the advantages which flow from free competition.

[6] CONTRACT—PARTIAL RESTRAINT OF TRADE—CONSTRUCTION OF CODE. Section 1673 of the Civil Code makes no exception in favor of contracts only in partial restraint of trade.

[7] ID.—CONTRACT IN RESTRAINT OF TRADE—EVIDENCE—INTENTION OF PARTIES.—In an action to recover damages for breach of a contract for the delivery in this state of lobsters from Mexican waters during the closed season, evidence of the intention of the parties as to the exclusive control and monopoly of the trade by the purchaser was admissible to show that the contract was one in restraint of trade.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

Hoefler, Cook & Snyder for Appellant.

Wm. H. Chapman for Respondent.

WASTE, J.—This action is one brought to recover damages for the breach of a contract. Plaintiff had judgment

---

4. Contracts in restraint of trade as affected by modern anti-trust acts, notes, 9 L. R. A. (N. S.) 446; L. R. A. 1917A, 379.

7. Admissibility of parol evidence to show contract in restraint of trade, note, 16 Ann. Cas. 391.

and the defendant has appealed. After final judgment the trial court made an order relieving the defendant from his default, and failure to file the notice and request for transcript required by the provisions of section 953a of the Code of Civil Procedure. The respondent has appealed from that order and has presented the questions thus raised in a motion to dismiss the appeal of the defendant.

[1] The facts germane to the preliminary motion and appeal are: Judgment was entered in favor of the plaintiff and against the defendant on February 4, 1919. On February 10th the defendant filed his notice of intention to move for a new trial, which motion was made and denied on February 28th. The defendant gave notice of appeal from the judgment, which was filed March 6th. During the proceedings on motion for a new trial the court reporter had made and delivered to the defendant a transcript of the testimony in the case. Upon the denial of the motion the defendant handed back the transcript to the reporter and orally requested him to also prepare the clerk's transcript and to file both transcripts with the clerk of the superior court. This the reporter did, although no such written notice and request for such transcript had been given to him, or to the clerk, as required by the provisions of section 953a of the Code of Civil Procedure. Thereafter, and on April 12th, the plaintiff moved the trial court for an order disapproving and declining to certify to the truth and correctness of the reporter's transcript, upon the ground that the defendant had failed to file with the clerk of the court any written request for the preparation of such transcript, as required by the above section of the code. Upon the hearing of that motion, the trial court made an order refusing to certify to the reporter's transcript on said ground, but later, and on the seventeenth day of June, as appears from the transcript filed in this court upon the appeal from the judgment, the court did append to the transcript its certificate to the correctness of the same. In so doing it also found and certified that there had never been any request to cause said transcript to be prepared in conformity with the requirements of the code. Thereupon the plaintiff moved the supreme court for an order dismissing the appeal, upon the ground that no notice requesting a transcript of the record, such as is required by section 953a of the Code

of Civil Procedure, had ever been given. Upon the hearing of the motion it was suggested by the supreme court that the defendant should apply to the superior court for relief, under the provisions of section 473 of the Code of Civil Procedure, and the motion to dismiss the appeal was continued to allow the defendant an opportunity to make such application. Thereafter the defendant filed in the superior court a notice of motion to be relieved from his failure to file the request for the transcript, accompanying his notice with affidavits intended to bring the matter within the provisions of said section 473. Upon the hearing of said motion the superior court made an order permitting the defendant to file the request for the transcription of the record, and relieved him from the effect of his failure to file the same at an earlier date upon the ground of mistake, inadvertence, surprise, and excusable neglect. A certified copy of the order was filed in the supreme court on September 3, 1919, the cause having been thereafter transferred to the district court of appeal for the first appellate district, division one, for hearing and determination. That court first considered the question presented by the foregoing facts, and, speaking through Mr. Justice Richards, said:

"It is conceded that the defendant's notice of appeal from the judgment herein was duly given and that a timely and proper undertaking on appeal was duly filed. This being so, the supreme court thus acquired jurisdiction to hear and determine the appeal from the judgment. The preparation and filing of a proper record upon which said appeal should be heard was a matter of after-consideration, and was one which in most cases still required action on the part of the trial court or of the judge thereof, notwithstanding the taking and perfection of the appeal. That portion of section 953a of the Code of Civil Procedure which refers to the request of the appellant for the preparation and filing with the clerk of the trial court of the transcript has reference to such subsequent proceedings in the trial court as shall result in the preparation and proper certification of the transcript which is to be used upon the appeal, and hence all of these matters are matters entirely within the jurisdiction of the trial court, notwithstanding the taking of such appeal, and are not matters which affect the jurisdiction of the supreme court to hear and determine the

appeal. This being so, we are of the opinion that when the motion to dismiss the appeal from the judgment in this case was presented to the supreme court, based as it was upon the ground that no such written request for a transcript as is required by the provisions of section 953a of the Code of Civil Procedure had ever been filed with the clerk of the trial court, the suggestion of the supreme court that the appellant's remedy for such defect or default was by way of an application for relief made to the trial court was in all respects a proper and timely suggestion; and that the appellant in acting thereon was pursuing the only method which was open to him for remedying his defective record; and that the trial court, upon his motion for such relief under the provisions of section 473 of the Code of Civil Procedure, had jurisdiction, upon a proper showing, to grant him such relief.

"The showing which the defendant there made, supported as it was by affidavits, was deemed sufficient by the trial court to entitle the defendant to the relief asked; and since the granting of such relief was within the powers of the trial court, and since its order made in that behalf enables this court to hear and dispose of the appeal from the judgment herein upon its merits, we shall not inquire too closely into the efficiency of the affidavits presented to the trial court upon the hearing of said motion. The record, as thus finally made up, is sufficient in form to satisfy the requirements of the statute; and this being so we are of the opinion that the motion to dismiss the appeal from the judgment should be denied, and that the order of the trial court permitting the defendant to amend his record in the respect indicated should be affirmed. It is so ordered."

We approve and adopt the foregoing conclusion of the district court of appeal.

This brings us to a determination of the merits of the appeal from the judgment. The facts necessary to a complete understanding of that matter may also be gleaned from the clear and succinct statement of Mr. Justice Richards:

"The action was one brought to recover damages for the breach of a contract entered into between one W. E. Zander, plaintiff's assignor, and the defendant, by the terms of which said Zander agreed to deliver to the defendant, f. o. b. San

Diego, live lobsters at seventeen cents per pound, and boiled lobsters at nineteen cents per pound, to the extent of five tons per week, from the date of said agreement, to wit, April 2, 1917, to October 15, 1917, to be paid for upon presentation of shipping receipts showing that the goods were received in good order by the transportation company. The agreement contained a clause to the effect that the defendant should have 'the exclusive right to sell these lobsters in California, north of parallel 36 deg. north latitude, and in the states of Oregon, Washington and Nevada.' The defendant received certain shipments of these lobsters between April 2 and May 15, 1917, but on or about the latter date refused to order or receive or accept any further shipments of said lobsters or to further comply with his said agreement, to the plaintiff's damage, according to the averments of the complaint, in the sum of $5,579.41. The defendant in his answer, while admitting the making of said agreement, made certain denials as to his refusal to accept said lobsters under said agreement, and also as to the profit which would have accrued to the plaintiff or his assignor as a result of the keeping of said agreement. In addition to these denials the defendant filed an amendment to his answer in which he affirmatively averred that at the time of entering into said contract the said W. E. Zander represented to defendant that he was the sole agent for a certain fisheries company at San Diego, California, of which said company one M. Kondo was the manager, and that said fisheries company would control the entire supply of lobsters which could be shipped into California from Mexican waters during the term of said contract, and that if said defendant would agree to take the number of tons of said lobsters per week from said Zander, during said time, the said Zander or the said fisheries company would supply no lobsters during said period to any other person or persons north of the thirty-sixth parallel, and that the defendant would have the exclusive right to sell such lobsters in the territory named in said contract north of said parallel of latitude. He further alleges that he relied upon said representations in entering into said contract, but that he at no time received or had the exclusive right to sell said lobsters north of said parallel, nor did the said Zander live up to or perform his part of the agreement in that regard, and for that

reason said defendant refused to order or receive any lobsters from said Zander after the fifteenth day of May, 1917.''

Upon the issues as thus made up the cause proceeded to trial, and upon such trial plaintiff's assignor, Zander, testified to an agreement between himself and the fisheries company represented by said Kondo, by which Zander was to receive the lobsters, which in turn he was to sell to the defendant. He testified also that so far as he, Kondo, and the fisheries company were concerned, it was understood that during the pendency of the contract Kondo would not ship lobsters into the territory, and consequently they did not, nor did either of them, sell or supply lobsters to any other person than said defendant for delivery or use north of the thirty-sixth parallel of latitude; that he deemed himself obligated not to sell lobsters to any other parties than the defendant in that territory. There was some testimony offered on behalf of the defendant to the effect that the fisheries company violated this understanding.

Upon the submission of the cause findings were waived, and the court rendered judgment in plaintiff's favor for the sum of four thousand five hundred dollars and costs. From such judgment the defendant has prosecuted this appeal.

The appellant in his reply brief makes for the first time the contention that the contract, upon · which the plaintiff seeks to recover, is illegal and void for the reason that it is such a contract in restraint of trade as would constitute a violation of the terms of the Sherman Anti-Trust Act. The respondent objects to a consideration of the point upon the ground that objection comes too late. [2] But a void contract, a contract against public policy or against the mandate of the statute, may not be made the foundation of any action either in law or in equity. (*Santa Clara Valley Mill & Lumber Co.* v. *Hayes*, 76 Cal. 387–390, [9 Am. St. Rep. 211, 18 Pac. 391]; *Estate of Groome*, 94 Cal. 69–72, [29 Pac. 487]; *Chateau* v. *Singla*, 114 Cal. 91–94, [55 Am. St. Rep. 63, 33 L. R. A. 750, 45 Pac. 1015].) As the appellant comes now into court pleading that he has violated the law and is seeking relief based upon his own unlawful acts, respondent contends that the court should leave him where it finds him. But neither the silence nor the consent of the parties justifies the court in retaining jurisdiction of such

an action. (*Ball* v. *Putnam*, 123 Cal. 134–140, [55 Pac. 773].) Anyone sued upon a contract may set up a defense that it is a violation of an act of Congress, and if it is found to be so, that fact will constitute a good defense to the action. (*Bement* v. *National Harrow Co.*, 186 U. S. 70–88, [46 L. Ed. 1058, 22 Sup. Ct. Rep. 747, see, also, Rose's U. S. Notes].) The burden ordinarily rests upon the party asserting the invalidity of the contract to show how and why it is unlawful (*Harbison-Walker Co.* v. *Stanton*, 227 Pa. St. 55–63, [75 Atl. 988]), and, as a general rule, cases will not be reversed upon points which the respondent has not had an opportunity to discuss, but in cases of this kind it matters not that no objection is made by either party. [3] When the court discovers a fact which indicates that the contract is illegal and ought not to be enforced, it will, of its own motion, instigate an inquiry in relation thereto. (*Kreamer* v. *Earl*, 91 Cal. 112–118, 27 Pac. 735]; *Pacific Wharf & Storage Co.* v. *Standard American Dredging Co.*, 184 Cal. 21, [192 Pac. 847].) In this case, however, appellant raised the objection as to the invalidity of the contract in his closing brief in the district court of appeal, and the point was discussed by both parties to the appeal in the petition and answer on application for hearing in this court.

The contract entered into by the parties to this controversy is contained in two written documents reading as follows:

"San Francisco, April 2, 1917.

"A. Paladini,

"San Francisco, Cal.

"Dear Sir:

"I agree to deliver to you f. o. b. San Diego live lobsters at seventeen (17) cents per pound, and boiled lobsters at nineteen (19) cents per pound, and will agree to deliver to you up to five tons per week, from date to October 15th, 1917, subject to weather conditions and run of lobsters.

"You are to have the exclusive right to sell these lobsters in California north of parallel 36 degrees north latitude, and in the states of Oregon, Washington and Nevada.

"This is contingent upon your agreeing to take at least four tons of lobsters a week from me on these terms. The payments to be made upon presentation to you of shipping

receipts showing that goods were received in good order by the transportation company.

"Yours truly,
"W. E. ZANDER."

"San Francisco, April 2, 1917.

"W. E. Zander,
    "San Francisco, Cal.

"Dear Sir:

"I agree to take from you or your shipper at least four tons of lobsters a week from date to October 15th, 1917, in lots of boiled and live lobsters as I shall require, at the price quoted to me in your letter of this date, and on the terms and conditions therein contained. I am to have the exclusive right to sell the lobsters in California north of parallel 36 degrees north latitude, and also in the states of Oregon, Washington and Nevada.

"Yours truly,
"A. PALADINI."

During the year 1917 the defendant was engaged in the fish trade in San Francisco. Part of his business consisted in buying and selling lobsters. At that time, as now, under the fish and game laws of the state the months from March 1st to October 14th constituted a closed season during which no lobsters may be taken in California, or in waters lying south for a distance of ten miles from the international boundary line between the United States and Mexico, extended westerly in the Pacific Ocean. (Pen. Code, sec. 628.) W. E. Zander, plaintiff's assignor, had contracts with fishing companies operating in Mexican waters south of the prescribed boundary line. He entered into the foregoing contract with appellant, and supplied the lobsters under its terms until the latter part of May, or first part of June, when the appellant refused to accept any further shipments upon the ground that, according to Zander's testimony, the market was overstocked and he could not sell them as fast as they were to be delivered under the contract. The evidence for the appellant was that he refused the shipments because Zander refused to stop the fisheries companies from selling lobsters to other persons in his exclusive territory.

Whatever may have been the reason for appellant refusing to go forward in the performance of the agreement,

it seems to be conclusively established that in the inception of the transaction it was contemplated by the parties that the contract was one which would result in at least a partial restraint of trade. In that connection it appears that Zander obtained from the companies supplying him the exclusive right to sell lobsters in the northern two-thirds of California and in the states of Oregon, Washington, and Nevada. He testified that under his agreement with appellant he was obligated not to, and did not, sell any lobsters in that territory to anyone else than the defendant, and that the fisheries company understood, and were bound by, his contract. The evidence for the appellant is to the same effect, but went further and tended to establish a breach of this agreement on the part of the fisheries companies. The plain terms of the contract itself confirm the intent of the parties to prevent either Zander or the parties supplying him from engaging in the business of selling lobsters to anyone but appellant within the specified territory. There can be no escape from the conclusion that underlying the agreement, and as part of the consideration for the contract, was the purpose of putting it into the power of the appellant to control the lobster market within the limits of the states mentioned, so far as lay within the power of Zander and the fisheries companies, by restraining themselves from exercising their own lawful business of supplying the market generally. The result would tend toward a monopoly of the trade in appellant and a restriction of the trade of the other parties to the contract. [4] We think the contract is illegal, not only as being in violation of the federal statute (Sherman anti-trust law), but also as being contrary to the provisions of our own code section, which provides that every contract by which one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than relating to exceptions in favor of sales of goodwill and in favor of partnership arrangements, is to that extent void. (Civ. Code, sec. 1673.) This last objection to the contract was not raised by either party, but it suggests itself so logically in relation to the transaction that we have considered it in connection with the point raised by the appellant.

The Sherman Anti-trust Act, by the first section, declares that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

among the several states, or with foreign nations, is . . . illegal." (26 U. S. Stats. at Large, 209 [7 Fed. Stats. Ann., p. 336; U. S. Comp. Stats. 1918, Compact ed., sec. 8820].) The act was passed for the purpose of protecting trade and commerce among the several states, or with foreign nations, from unlawful restraints and monopolies. [5] An agreement which has some direct and immediate effect upon interstate commerce is within the inhibition of the statute. (*Standard Oil Co.* v. *United States*, 221 U. S. 1-66, [Ann. Cas. 1912D, 734, 34 L. R. A. (N. S.) 834, 55 L. Ed. 619, 31 Sup. Ct. Rep. 502].) It is not essential that the result of the contract should be a complete monopoly in order to vitiate the agreement. It is sufficient if it really tends to that end and deprives the public of the advantages which flow from free competition. (*United States* v. *Knight Co.*, 156 U. S. 1-16, [39 L. Ed. 325, 15 Sup. Ct. Rep. 249, see, also, Rose's U. S. Notes].) The effect of the contract at bar may be well understood in view of the fact that its duration was only for the closed season for lobsters in the state during which the supply for the trade must of necessity come from an outside source. It seems to us to be very plain that the agreement was intended to effect a virtual monopoly of the lobster trade in the central and northern portions of this state, and so far as shipments to Oregon, Washington, and Nevada were concerned. It was, therefore, within the provisions of the federal act. (*Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211-241, [44 L. Ed. 136, 20 Sup. Ct. Rep. 96].) So far as our own statute is material, we think argument on the question is concluded by the decision of this court in *Santa Clara Valley Mill & Lumber Co.* v. *Hayes*, 76 Cal. 387, [9 Am. St. Rep. 211, 18 Pac. 391], which approved and followed *Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558, [23 Am. Rep. 190]. The case had to do with a combination among manufacturers of lumber, limiting the amount to be manufactured, and giving the plaintiff in the action control of the supply for one year within certain territory. The action was one to recover damages for a breach of the agreement. The trial court gave judgment for the defendants. In affirming the judgment this court said:

"Plaintiff had an undoubted right to purchase any or all of the lumber it chose, and to sell at such prices and places

187 Cal.—47

as it saw fit, but when as a condition of purchase it bound its vendor not to sell to others under a penalty, it transcended a rule the adoption of which has been dictated by the experience and wisdom of ages as essential to the best interests of the community, and as necessary to the protection alike of individuals and legitimate trade.

"With the results naturally flowing from the laws of demand and supply, the courts have nothing to do, but when agreements are resorted to for the purpose of taking trade out of the realm of competition, and thereby enhancing or depressing prices of commodities, the courts cannot be successfully invoked, and their execution will be left to the volition of the parties thereto."

The desire and the intention of the parties to secure to defendant, so far as possible, a monopoly of the lobster business in the selected territory, and the consequent covenant in restraint of the trade, entered so fundamentally into the inception and consideration for the transaction as to render the terms of the contract nonseverable, and it is wholly void. (*Santa Clara Valley Mill & Lumber Co.* v. *Hayes, supra,* p. 393; *Arnot* v. *Pittston & Elmira Coal Co., supra; Prost* v. *More,* 40 Cal. 347.) Whether or not the defendant obtained what he sought, an entire monopoly of the trade, is immaterial. [6] The statute (Civ. Code, sec. 1673) makes no exception in favor of contracts only in partial restraint of trade. (*Chamberlain* v. *Augustine,* 172 Cal. 285–288, [156 Pac. 479].) That the covenants of the contract are illegal as being in restraint of trade, and against the express mandate of the law of the United States and of this state, we entertain no doubt. (*Getz Bros. & Co.* v. *Federal Salt Co.,* 147 Cal. 115–118, [109 Am. St. Rep. 114, 81 Pac. 416].)

[7] The appellant offered to show by parol testimony that, under the terms of the contract, it was meant by the parties to the agreement and was intended that he should have the exclusive right to sell lobsters within the restricted territory; that at the time the contract was made Zander represented to him that the M. Kondo Fisheries Company and M. Kondo would control the entire supply of lobsters which could be shipped into California from Mexican waters, thus assuring appellant the exclusive control and a monopoly of the lobster trade on the Pacific Coast. The court excluded the evidence. Appellant now contends that it was

admissible upon the ground, first, under the general rules that ambiguities in written contracts may be explained by parol, and, second, to show that the contract was illegal as being one in restraint of trade. As to the first of these grounds, the only one assigned in the trial court, we think the evidence was properly excluded. On this point the district court of appeal correctly held that the ''only exclusive right which the defendant obtained under the terms of this contract was one which was exclusive only so far as it bound the other party to the contract, and possibly also the fisheries company, not to ship or sell lobsters in said territory in competition with the defendant; and, as we have seen, the evidence showed that the contract was kept by the plaintiff's assignor in this regard. The contention of the appellant that the seller of the product bound himself and the company from which he purchased said lobsters to see to it that no other persons whatever shipped or sold lobsters within the specified territory in competition with the appellant would be a strained construction, to which the language of said contract taken in its ordinary signification is not susceptible; and the trial court, therefore, committed no error in refusing to the defendant the right to introduce oral evidence which would have the effect of varying and contradicting the terms of the written agreement.'' On the second ground suggested, however, for the first time on this appeal, the evidence was admissible in support of appellant's offer to show that the contract was one in restraint of trade. (*Buffendeau* v. *Brooks,* 28 Cal. 642; *Benicia Agricultural Works* v. *Estes,* 3 Cal. Unrep. 855, [32 Pac. 938, 940]; *Daw* v. *Niles,* 104 Cal. 106–118, [37 Pac. 876]; *McMullen* v. *Hoffman,* 174 U. S. 639, [43 L. Ed. 1117, 19 Sup. Ct. Rep. 839, see, also, Rose's U. S. Notes].) The rule is thus stated in 3 Williston on Contracts, section 1753, page 3060: ''Parol evidence is always competent to show that a written contract, though lawful on its face, was illegal or part of an illegal transaction; and illegality if serious need not be pleaded or urged to enable the court to act upon it.'' The evidence was not offered for that purpose and the lower court did not have the point in mind when ruling on its admissibility. Consequently we would not be justified in reversing the judgment on this ground alone, for, as already pointed out, sufficient evidence was presented to show the

nature of the contract. The additional testimony offered would merely serve to emphasize the point.

The appellant contends that there is no testimony as to the market value of the lobsters at the time of delivery at San Diego under the contract, and that therefore the evidence is insufficient to support the judgment fixing the amount of damages suffered by the plaintiff. The respondent's first reply to the contention is that the denials in that respect, contained in the answer, are framed in the objectionable form of the negative pregnant, which raised no issue. Assuming that to be so, the cause proceeded to trial upon the theory that the issue had been properly tendered, and respondent's objection should not now be considered. The contract called for delivery f. o. b. San Diego. Considerable evidence was presented by the plaintiff as to the cost of lobsters to him during the time the contract was being performed by the appellant, and as to what would have been their cost during the entire term of the agreement had the appellant on his part continued to perform. No objection was offered to this testimony. Under section 3311 of the Civil Code the measure of damages suffered by the respondent was "the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller," and it has been decided by this court that under similar circumstances the value to the plaintiff for the purpose of fulfilling his agreement to sell personal property would be, *prima facie*, the cost thereof to him. (*Thompson* v. *Hamilton Motor Co.*, 170 Cal. 737–739, [Ann. Cas. 1917A, 677, 151 Pac. 122].)

The judgment is reversed.

Wilbur, J., Lennon, J., Sloane, J., Shurtleff, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.